## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHAWN THOMAS KALETA,
an individual, BALI HAI JV, LLC,
a Florida limited liability company,
3605 GULF DR., LLC, a Florida limited
liability company, 100 73RD,.LLC, a Florida
limited liability company, 100 73RD 203A, LLC,
a Florida limited liability company, and
100 73RD ST. UNIT 202C, LLC, a Florida limited
liability company,

      Plaintiffs,

v.

CITY OF HOLMES BEACH,
a Florida municipal corporation,

      Defendant.

_____/

Case No.: 8:22-cv-02472

DEMAND FOR JURY TRIAL

INJUNCTIVE RELIEF REQUESTED

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
## WITH INJUNCTIVE RELIEF SOUGHT

Plaintiffs, SHAWN THOMAS KALETA ("Kaleta"), BALI HAI JV LLC, a

Florida limited liability company, ("Bali Hai Resort"), 3605 GULF DR., LLC, a

Florida limited liability company, ("Island West"), 100 73RD, LLC, a Florida limited

liability company, 100 73RD 203A, LLC, a Florida limited liability company, and

100 73RD ST. UNIT 202C, LLC, a Florida limited liability company, by and through

the undersigned counsel, hereby file this Amended Complaint against Defendant,

the CITY OF HOLMES BEACH ("City"), a Florida municipal corporation, and allege as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages and Declaratory and Injunctive Relief with respect to the Plaintiffs' civil rights. Plaintiffs' rights are secured by the Free Speech and Equal Protection Clauses of the First and Fourteenth Amendments as protected by 42 U.S.C. §§ 1983 and 1988. The City is, and has been, depriving Plaintiffs of these Constitutional and civil rights. As a result, Plaintiffs have been, and continue to be, irreparably damaged.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 and 1367.

3.      This Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) on the grounds that some or all of the conduct at issue took place in the Middle District of Florida.

## PARTIES

5.     Kaleta is an individual who owns real property and conducts business within the City.

6.     Bali Hai JV, LLC, ("Bali Hai Resort"), is a Florida limited liability company with its principal place of business at 6900 Gulf Drive, Holmes Beach, FL 34217 and is authorized to conduct and do business in Manatee County. Kaleta is majority owner of Bali Hai Resort.

7.     Plaintiff 3605 Gulf Dr., LLC, is a Florida limited liability company, (commonly known as the "Island West" property), with its principal place of business at 1401 8th Avenue West, Bradenton, FL 34205 and is authorized to conduct and do business in Manatee County.

8.     Plaintiff 100 73rd, LLC, is a Florida limited liability company with its principal place of business at 1401 8th Avenue West, Bradenton, FL 34205 and is authorized to conduct and do business in Manatee County.

9.     Plaintiff 100 73rd 203A, LLC, is a Florida limited liability company with its principal place of business at 1401 8th Avenue West, Bradenton, FL 34205 and is authorized to conduct and do business in Manatee County.

10.     Plaintiff 100 73rd St. Unit 202C, LLC, is a Florida limited liability company with its principal place of business at 1401 8th Avenue West, Bradenton, FL 34205 and is authorized to conduct and do business in Manatee County.

3

11.     Plaintiffs having a name or address at 100 73rd Street are part of a larger multi-ownership hotel known as the "Coconuts" property and may be referred to "Kaleta Coconuts Properties."

12.     All LLC Plaintiffs listed herein are collectively referred to as the "Kaleta Companies."

13.     The City is a Florida municipal corporation.

### GENERAL ALLEGATIONS

### Plaintiffs' Development
### And Vacation Rental Operations

14.     Kaleta is a licensed general contractor, developer, and hotelier who engages in the rehabilitation of real estate, residential and commercial construction, and operation of commercial properties and beachfront hotels.

15.     Kaleta Companies are several of the ownership entities through which Kaleta owns and operates the several commercial properties, with a specific focus on Anna Maria Island.

16.     Kaleta and Kaleta Companies' operations include short-term vacation rentals (as that term is defined by Fla. Stat. § 509.242), spanning more than a decade on Anna Maria Island, Florida.

17.     Over the last several years, City has focused its regulatory attention unequally upon Kaleta, the Kaleta Companies (including Islands West and Kaleta's

Coconuts Properties) and the Bali Hai Resort, which has resulted in municipal and circuit court litigation.

18.     In retaliation for the exercise of his lawful business practices and his exercise of free speech, the City, its Commissioners and its Mayor have all singled out Kaleta directly and via the Kaleta Companies for individualized over-regulatory treatment under color of law in the form of an unofficial "Anti-Kaleta Policy."

19.     The City formed and implemented its Anti-Kaleta Policy of unequal, inordinate and unconstitutional over-regulation of Plaintiffs. In fact, the City ignited the Anti-Kaleta Policy in an August 14, 2012 Commission meeting targeting Kaleta and Kaleta businesses. Then-Commissioner Peelen targeted Kaleta publicly calling him a "horror show" for "invading the city" and for "transforming [the City] … not in a good way." The Mayor announced that she had never met Kaleta but "still wouldn't like him," and burdened Kaleta to prove that that he was a "good citizen."

20.     Another City Commissioner was caught stealing from a Plaintiff construction site and admitted to doing so because Plaintiff Kaleta "needed to be stopped" from developing.

21.     The Anti-Kaleta Policy has prevented Plaintiff from further lawful development of its private property, while at the same time allowed other comparable property owners, hotel owners, real estate developers, and short-term-renters to operate without such regulatory oversight.

22.    In retaliation for the Plaintiffs' exercise of lawful business practices and the exercise of free speech, City has unlawfully focused its Anti-Kaleta Policy of inordinate and unconstitutional over-regulatory attention solely upon Plaintiffs by:

    a.  Stalling development by "slow walking" applications and other paperwork,

    b.  Excluding Plaintiffs from municipal hearings,

    c.  Imposing fines upon Plaintiffs without proper notice,

    d.  Selectively enforcing regulation and requirements against Plaintiffs, but leaving those same requirements unenforced to comparable owners and developers,

    e.  Unlawfully threatening arrest of guests on Plaintiff Kaleta's private property; and,

    f.  Failing to respond to lawful public records requests.

23.    These actions in furtherance of the City's Anti-Kaleta Policy, as more fully described below, have been in retaliation for Plaintiffs, their agents, and/or their counsel's efforts to defend Plaintiffs' constitutionally protected rights. As a result of the City's Anti-Kaleta Policy, Kaleta has effectively exhausted all other remedies and seeks Federal Court intervention to achieve a fair and just result.

**In Retaliation For Prior Litigation, The City Stalled
Plaintiff's Development And Operations at Bali Hai Resort:
Bar/lounge and Beachfront Building**

24.     On February 15, 2019, Kaleta purchased the beachfront Bali Hai Resort for approximately $17 million dollars and invested an additional $1 million into rehabilitation and remodeling.

25.     In November 2019, City approved the rehabilitation and remodel plan by approval of the building permit.

26.     The Bali Hai Resort had an existing bar and lounge facility for decades prior to purchase as part of its original construction.

27.     On or about December 10, 2019, the City signed an approval for Bali Hai's 4COP license application submitted to the Florida Department of State for the bar/lounge. *See License Application, signature page 6, signed by Mr. Brown on behalf of City of Holmes Beach Planning and Zoning, attached as Exhibit A*.  The Florida Department of State granted the 4COP license to Bali Hai on or about January 31, 2020.

28.     On March 6, 2020, the City provided a Letter Notice of Violation demanding corrective action, and also confirming Bali Hai's permission of Bali Hai to serve alcohol to guests. *See Letter dated March 6, 2020, Notice of Violation, attached as Exhibit B*. The Letter states, explicitly:

> the property owner is prevented from serving anyone other than guests of the hotel/motel alcoholic beverages…

*See Exhibit B.* By the Letter's express language, the City approves of Bali Hai selling alcohol to guests within an "enclosed building." *See Exhibit B.*

29.    The Letter appears to require Bali Hai to submit a Site Plan to resolve an issue regarding the sale of alcohol by the pool. In this regard, the Letter states, explicitly:

> No service of alcohol by the pool or on the patio is permitted without an approved site plan.

*See Exhibit B.*

30.    However, under the Code Ordinances of City of Holmes Beach, Section 3.5(B)(5)(b), no site plan should be required for the Bali Hai rehabilitation project regarding the service of alcohol and food. As the Code reads, projects and allowable uses that do not involve construction or erection of existing buildings, or enlargement or expansion of the floor area of an existing building, which Bali Hai fits, are explicitly exempted from a site plan requirement, as in the subsection entitled, "Exemptions from major and minor site and development plan review," and containing the language:

> Proposed development that does not involve the construction or erection of buildings or structures, or the enlargement or expansion of floor area of an existing building or structure.

*See Code Ordinances of City of Holmes Beach, Sec. 3.5(B)(5)(b).*

31.    The Bali Hai development project involves neither construction or erection of buildings or structures, nor the enlargement or expansion of floor area of an existing building or structure.

32.    As a result of the Letter, and in an effort to resolve the issue(s) in dispute, Bali Hai submitted a Site Plan application to the City pursuant to the above language to enable the selling alcohol and food to its guests in the enclosed bar/lounge.

33.    On February 9, 2021, the City Commission *unanimously approved* the Site Plan application in workshop to go to a final vote on February 23, 2021.

34.    Likewise, on February 23, 2021, the City Commission *unanimously approved* the Site Plan including the allowance to sell food and alcohol with limiting conditions including sale only to guests in the enclosed bar/lounge.

35.    Independently, on September 21, 2021, in other litigation involving the City, Kaleta and several other independent Kaleta properties and claims of Bert Harris violations (the prior "Bert Harris Act Litigation"), a settlement was reached which was favorable to Kaleta which the City Commission approved.

36.    Then, on October 21, 2021, at the final City Commission meeting to approve the Bali Hai Site Plan, and only after the Bert Harris Act Litigation settlement, and after the Commission learned that Kaleta holds a majority ownership

interest in Bali Hai and in accordance with the City's Anti-Kaleta Policy, the City Commission (each member) reversed its course and voted *unanimously to permanently prohibit* Bali Hai from operating a bar/lounge entirely on its premises, despite its history and previous allowances.

37.    Despite continued inquiry, the City still has not provided the reasons for the denial and permanent prohibition of the bar/lounge area and the sale of alcohol and food therein, contrary to its own ordinances which require the City to provide such reason. *See Code Ordinances of City of Holmes Beach, Sec. 3.5(D)(8)* ("The action taken by the city commission shall be in writing … and shall include reasons for … disapproval").

38.    As a comparison, Angels Nest, LLC (commonly known as Cedar Cove Cottages), a similarly-situated comparator identical in all relevant respects to Bali Hai, was given approval by the City in 2019 to sell alcoholic beverages to its guests from a bar area at its hotel. Additionally as a comparison, another similarly situated comparator identical in all relevant resects to Bali Hai, The Ugly Grouper, which serves alcohol and has live music every night of the week until at least 8:00 p.m. Each are permitted to do so by the City.

39.    Kaleta and Bali Hai have suffered a unique class-of-one treatment, in furtherance of the City's Anti-Kaleta Policy, in the prohibition by the City preventing Plaintiff from taking the same action.

40.    Additionally, on August 15, 2021, Bali Hai applied for a permit for its beachfront building, an issue independent from the bar/lounge issue.

41.    However, to date, the City has repeatedly rejected Bali Hai's beachfront building permit application claiming that approval of the beachfront application would be contingent upon an agreement to permanently prohibit the sale of alcohol or food to guests at Bali Hai bar/lounge.

42.    The City's arbitrary and capricious reversal of its approval to sell alcohol to guests within enclosed buildings, its unanimous reversal of its position related to the bar/lounge area only after learning of Kaleta's involvement, its refusal to issue building permits without a Site Plan inapposite of the City's Code, and its contingent requirement for an agreement on the Bali Hai bar/lounge issue prior to granting any permit on Bali Hai's beachfront building clarifies the implementation of its City's Anti-Kaleta Policy which has unreasonably stalled Kaleta's and Bali Hai's development efforts at the Bali Hai Resort.

**The City Excludes Plaintiffs' Counsel
From Code Enforcement Hearings**

43.    On May 7, 2019, the City issued a Stop Work Order at Bali Hai, and later alleged fines for violating that Stop Work Order.

44.    A hearing on the fines was held on June 11, 2021.

45.    In furtherance of the Anti-Kaleta Policy, the City refused the request of Plaintiff's counsel to appear at the hearing remotely or to continue the hearing to a date when counsel could appear.

46.    The City proceeded in the absence of Plaintiff or Plaintiff's counsel.

47.    In furtherance of the Anti-Kaleta Policy, the City imposed the maximum fine: $1,000.00 per day. Plaintiff had no choice but to appeal the adverse ruling entered in its absence.

48.    Upon appeal, the City conceded the appeal and then vacated the fines.

49.    Plaintiffs contends that discovery will reveal that at no time has the City prevented any other attorney on behalf of any other property owner or developer accused of City Code violations from appearing at a code enforcement hearing.

50.    The City's inexplicable exclusion of Plaintiff from the June 11, 2021, hearing, which can only be attributed to unique treatment of Plaintiff and the furtherance of its Anti-Kaleta Policy, has unreasonably stalled Plaintiffs' development efforts.

### The City's Selective Enforcement And Selective Prosecution Of Certain Rental Ordinances Against Plaintiffs

51.    **The Out-of-State Plate at the Tiki Hut**: On May 10, 2021, the City brought a baseless code enforcement action against one of Plaintiff Kaleta's properties located at 102 48th Street, (the "Tiki Hut" property) based solely on a photo of an out-of-state license plate on a car parked in the driveway of the Tiki Hut.

Based solely on the out-of-state license plate, the City claimed that Plaintiff Kaleta was renting the Tiki Hut for less than 30 days in violation of an ordinance.

52.     On May 19, 2021, a hearing was held on the out-of-state plate code "violation."

53.     At the hearing, the magistrate found that the City's out-of-state code "violation" was baseless and dismissed the action for lack of evidence.

54.     Plaintiffs contend that discovery will reveal that no other comparable owners or developers have been cited for code violations in the absence of evidence nor based solely on out-of-state plates parked in their driveway

55.     **Discriminating Against Kaleta's Coconut Properties**. On June 15, 2021, the City cited the Kaleta Coconut Properties alleging nightly rentals, in violations of the City's Code of Ordinances.

56.     On or about October 20, 2021, City Code Enforcement hearings were held relating to Plaintiff's Coconuts properties' alleged violations.

57.     On November 12, 2021, the City's Magistrate ruled against the Kaleta Coconut Properties.

58.     Plaintiffs contend that discovery will reveal that other owners of Coconut Properties, having no connection to Kaleta, do not receive the City's attention, do not receive comparable citations, especially properties within this zoning district which have been rented nightly for decades like the Kaleta Coconut

Properties. Additional comparators to Kaleta's Coconut Properties include the owners of 101 67th Street, Holmes Beach, Florida and 102 39th Street, Holmes Beach because these owners are permitted to rent nightly free of the City's regulation(s).

59. **Discriminating Against Kaleta's Island West Properties**. On or about December 16, 2021, City cited Islands West Resort alleging nightly rentals, in violations of the City's Code of Ordinances, despite the fact that Islands West Resort is a hotel, and, as such, nightly rentals are authorized by the Code.

60. Plaintiffs contend that discovery will reveal that the prior owner(s) of Islands West Resort were never subjected to similar City Code violations for renting Islands West Resort on a nightly basis, which has been occurring for decades.

61. **Additional Comparators Regarding Length-of-Stay**. Prior and up to July 19, 2022 and continuing to the present, City was notified of at least five (5) additional properties advertising and operating in violation of the City's length-of-stay ordinance. Despite the City's enforcement restraining the business practice of Kaleta and the Kaleta companies, specifically including Kaleta's Coconuts Properties, Kaleta's Island West property, and Kaleta's Tiki Hut property, the City refuses to act to enforce the same regulations against the following Holmes Beach properties: 7204 Palm Drive, 56th Street and Carissa, 201 54th Street, 203 54th Street and 312 57th Street.

62.     The actions of the City were taken solely to target and harass Plaintiff, arbitrarily subjecting him to ordinances that the City has not enforced against other current and/or prior owners within the Coconuts Beach Resort and the Islands West Resort and results from an implementation of the Anti-Kaleta Policy, has unreasonably stalled Plaintiffs' development and operational efforts.

## The City's Failure To Respond To Plaintiffs' Counsel's Public Records Requests

63.     In response to the unfair treatment inflicted by the City upon Defendants, and the City's Anti-Kaleta Policy, several public records requests were made to the City. *See Emails dated September 16, 2021 and November 30, 2021 requesting public records, attached as Exhibit C, composite.*

64.     On September 16, 2021, counsel for Kaleta requested the public records from the previous September 15, 2021 hearing, specifically requesting:

1. All letters of objection from residents to the site plan that were received and/or admitted to record.
2. The report read into the record by the Chairperson last night during the commissioner's comments.
3. Although I'm reluctant re-live last night, the access information to view last night's recorded meeting on Zoom. How long is this recording preserved?

*See Exhibit C.*

65.     The September 16, 2021, request went unanswered so a second Public Records Request was sent on March 10, 2022. It, too, went unanswered.

66.     Plaintiffs contend that discovery will reveal that other comparable or similarly situated requests were not ignored by the City and the City's actions were taken solely to target and harass Plaintiff, and results from an implementation of the Anti-Kaleta Policy, has unreasonably stalled Plaintiffs' development and operational efforts

## **The City's Additional Harassing And Retaliatory Actions (Tiki Hut)**

67.     On July 21, 2022, during the pendency of a prior federal lawsuit filed by Kaleta against the City, and as a direct result of that lawsuit, the City has increased its Anti-Kaleta Policy and efforts to harass and retaliate against Kaleta for exercising his Constitutional rights.

68.     Specifically, a Code Compliance Supervisor, James Thomas, acting under color of state law in his capacity as a code enforcement officer, appeared at a Kaleta owned property located at 102 48th Street, Holmes Beach, FL 34217 (the "Tiki Hut") and demanded information from its guests.

69.     In a stunning escalation, Code Compliance Supervisor Thomas contacted City of Holmes Beach Police Department demanding that officers be dispatched to the scene to enforce his "investigation."

70.     When Holmes Beach Police Officer(s) arrived at the Tiki Hut, Code Compliance Officer Thomas used the presence of Police to threaten to arrest all non-compliant guests for failure to provide their personal information. Under this direction, Police actively threatened to arrest the Tiki Hut guests claiming that failure to provide personal information would result in arrest in the name of Mr. Thomas' "investigation".

71.     Holmes Beach Police produced an Offense Incident Report memorializing the incident and confirmed that Police were asked to assist Code

Compliance Officer Thomas with an "Ordinance Violation case," and was instructed to "make contact" with a citizen and his status of renting the Tiki Hut. *See Offense Incident Report, Holmes Beach Police Department, FL0410400, attached as Exhibit D.*

72.    The Offense Incident Report confirms that the Police Officer was called specifically and intentionally to gather identification information from ordinary citizens under color of state law and under threat of arrest, as in:

> A phone conversation with the City of Holmes Beach Attorney yielded a [sic] answer that the subject [declining questions by police] was obstructing justice and could be arrested.
>
> * * *
>
> Code Supervisor Thomas went back to his office[r] and after consulting with the city attorney a notice of violation and court hearing was drafted and posted on the [Tiki Hut] property.

*See Exhibit D.* The Offense Incident Report states that the incident was recorded by Police body cam. *See Exhibit D.* A transcript of the incident has been ordered.

73.    In fact, Mr. Thomas and the Police were acting under the direct instruction of the Mayor and of the City's Attorney. In a subsequent email with the City's Attorney, the City's attorney confirmed the Attorney's insistence that Mr. Kaleta, or any guest, has an affirmative duty – while on private property – to comply with Police questioning and provide personal information and to suffer threat of

arrest. The City states very clearly their unlawful position in the attached email, as in:

> that if ID was not produced it could be considered obstruction of justice and might be subject to arrest.

*See Email dated July 21, 2022, Re: 102 48th Street and all Kaleta properties, attached as Exhibit E.*

74.    The City's position regarding arrests of citizens for refusing police questioning is contrary to Florida and Federal law. *See* 18 U.S.C. Chapter 73; *Fla. Stat* § 843.02 and *R.S. v. State*, 531 So. 2d 1026, 1027 (Fla. 1st DCA 1988) (declining questioning to police is not obstruction); *Sommer v. State*, 465 So. 2d 1339, 1343 (Fla. 5th DCA 1985) ("Police officers and other citizens, too, can ask questions of anyone on the street. Anyone questioned can refuse to answer").

75.    Plaintiffs contend that discovery will reveal that other no comparable or similarly situated owners or developers suffer individualized investigations by Code Enforcement Officers accompanied by Police while utilizing threats of arrest at the specific instruction by the City and the City's attorney. The City's actions were taken solely to target and harass Plaintiff, and results from an implementation of the Anti-Kaleta Policy.

### Consequences Of The City's Arbitrary And Capricious Actions

76.    As described above, the City has clearly adopted an Anti-Kaleta Policy and has engaged in a pattern of discriminatory and retaliatory actions against the

Plaintiff, motivated by the City's ill will resulting from: (1) Plaintiffs' business ventures, including short-term rentals, and the animosity of the City officials and staff toward this work; (2) the Plaintiffs' public speech questioning the motives and actions of the City officials and staff; (3) the Plaintiffs' past lawsuits against the City related to the enactment of laws and ordinances aimed to thwart short-term rentals; (4) Plaintiffs' requests that the City enforce their ordinances and codes uniformly as to all property owners who engage in the short-term and vacation rental business, including hotels/motels; (5) the City's desire to punish Plaintiff, and (6) for other unknown and arbitrary reasons.

77.    The City's Anti-Kaleta Policies and actions are intended to destroy Plaintiff's, business, his business reputation and to harass and frustrate Plaintiff and are furthered in an attempt to prevent and/or curtail future development, operations, remodel, and rental by Plaintiffs of short-term vacation rentals and/or resorts within the City.

78.    As a result of the City's Anti-Kaleta Policy and actions set forth above, Plaintiffs have, and continue to, suffer damages, including, but not limited to: loss of business and profits, loss of customers, reduction in value of properties currently owned by Plaintiff, costs related to compliance with the City's arbitrary and capricious demands; City fines, fees, and liens; mental anguish and suffering; emotional distress; a chill on rights to free speech and to petition government; and

costs and attorney's fees of this lawsuit and associated with pursuing various City administrative and judicial remedies which have proved, and continue to be, futile.

79.     Plaintiff's injury results from deliberate discriminatory and retaliatory decisions attributable to the City itself rather than its agents or employees as the City's officials and code enforcement officers, on behalf of the City, have taken the official actions more fully above. These are official City actions and are not those of the City's agents or employees.

80.     The City's actions have necessitated this Court's intervention in equity for injunctive relief and specific performance due to:

a.  The irreparable harm caused by the City's actions and Anti-Kaleta Policy; Plaintiffs continue to be harmed and their Constitutional and statutory rights violated by the actions of the City, and by reputational harm, which cannot be repaired once revealed into the public sphere. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)) (It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury.")

b.  Plaintiff's inadequate remedy at law; the Anti-Kaleta Policy continues to harm Constitutional and statutory rights of the Plaintiffs. Even if the

fines are stricken and the fees are remunerated, such a remedy is inadequate to rectify Plaintiff and to correct Defendant's behavior.

c.  Plaintiff's substantial likelihood of success on the merits. *Roth v. Bank of Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978) (Plaintiffs must only demonstrate that the legal issues they raise are substantial enough to constitute "fair ground[s] for litigation and thus [require] more deliberate investigation.")

d.  Favorable public policy in the enforcing of Constitutional and statutory rights of the Plaintiff. *Pursuing Am.'s Greatness v. F.E.C.*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."; *see also League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.")

81.  Plaintiffs have retained the undersigned attorneys and is obligated to pay them and their law firm a reasonable fee. Under 42 USC §§ 1983 and 1988, the City should be obligated to pay the attorney's fees, costs, and other fees and expenses should the Plaintiff prevail in this case.

**COUNT I:**
**CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**AND DAMAGES UNDER THE FEDERAL CONSTITUTION**
**FOR VIOLATION OF EQUAL PROTECTION OF LAW**
**(CLASS OF ONE THEORY)**

82.    Plaintiffs repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

83.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and seeks equitable relief and damages against the City for violating the Plaintiff's right to equal protection of law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution.

84.    Here, the City intentionally and arbitrarily treated Plaintiffs differently than other comparable property owners and/or developers who specialize in short-term vacation rentals, including hotels/motels, by withholding permits, arbitrarily denying portions of a site plan application with no valid, stated reason, reinterpreting City Code to negatively affect Plaintiffs, excluding Plaintiff's counsel from a code enforcement hearing, imposing fundamentally unfair requirements in connection with code enforcement fines, imposing fines despite lack of proper notice, preventing Plaintiffs from obtaining a meaningful review of code enforcement decisions on appeal, wrongfully threatened arrest on Kaleta's private property, and by forming and implementing its own Anti-Kaleta Policy, and investigating Kaleta

and Kaleta's Companies without cause thereby making unlawful demands upon Kaleta and guests.

85.    There is no rational basis for the different treatment as the City has arbitrarily and capriciously applied and enforced its facially neutral Codes along with its unwritten customs, policies, and practices (Anti-Kaleta Policy) unequally to discriminate against Plaintiff.

86.    The City's campaign of discrimination intentionally singled out Kaleta through the inequitable treatment and purposeful discrimination though the unequal application of its facially neutral Codes along with its unwritten customs, policies, and practices, (including the Anti-Kaleta Policy) which actions violated the Plaintiff's rights to equal protection of law, for which the City is liable and have actually and proximately caused harm to Plaintiff.

## COUNT II:
## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE FEDERAL CONSTITUTION FOR VIOLATION OF FIRST AMENDMENT RIGHTS

87.    Kaleta repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

88.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and seeks equitable relief and damages against the City for violating the Kaleta's right to free speech guaranteed under the First, Fifth and Fourteenth Amendments to the United States Constitution.

89.    Here, Kaleta has engaged in protected activity under the First Amendment by petitioning the City and by publicly commenting and filing for redress against the decisions made by the City Commission related to development and vacation rental restrictions, and was ultimately successful against the City related to certain Bert Harris Litigation. As an actual and proximate cause of Kaleta's protected speech activity, the City intentionally and arbitrarily treated Plaintiffs differently than other comparable property owners and/or developers who specialize in short-term vacation rentals, including hotels/motels, by withholding permits, arbitrarily denying portions of a site plan application with no valid, stated reason, reinterpreting City Code to negatively affect Plaintiffs, excluding Plaintiff's counsel from a code enforcement hearing, imposing fundamentally unfair requirements in connection with code enforcement fines, imposing fines despite lack of proper notice, preventing Plaintiffs from obtaining a meaningful review of code enforcement decisions on appeal and by forming and implementing its own Anti-Kaleta Policy, and investigating Kaleta and Kaleta's Companies without cause thereby making unlawful demands upon Kaleta and guests.

90.    Only upon learning of Kaleta's involvement in the Bali Hai Resort, the City applied an Anti-Kaleta Policy and retaliated against Kaleta by arbitrarily denying portions of the Bali Hai site plan application with no valid, stated reason. The City has withheld permits, reinterpreted City Code to negatively affect Kaleta

and his properties, excluded Kaleta's counsel from a code enforcement hearing, imposed fines despite a lack of proper notice, imposed fundamentally unfair requirements in connection with code enforcement fines, wrongfully threatened arrest on Kaleta's private property, and prevented Kaleta from obtaining a meaningful review of code enforcement decisions on appeal.

91.     This conduct has deterred Kaleta from expressing his First Amendment rights.

92.     The actions of the City and its officials aimed at Kaleta have gotten progressively oppressive, as the rhetoric relating to vacation rentals has increased.

93.     The City retaliated against Kaleta, and Kaleta's protected activities were the actual, proximate, sole, substantial or motivating cause of the retaliation. The City would not have undertaken its retaliatory actions in the absence of the Kaleta's protected activities.

94.     The City's actions violate Kaleta's First Amendment rights to petition government and for free speech, for which the City is liable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court grant the following relief:

a)    Trial by jury on all issues so triable;

b)    Render a Declaratory Judgment finding that the City's policies, interpretations, practices, and actions violate the rights of Plaintiffs secured by the Free Speech and Equal Protection Clauses of the First and Fourteenth Amendments as protected by 42 U.S.C. §§ 1983 and 1988;

c)    Grant Plaintiffs injunctive relief ordering the City to cease the unconstitutional and unlawful practices directed at Plaintiffs' ability to: be properly notified and represented at code enforcement hearings, be treated fairly at code enforcement hearings, conduct his business, including hotel/motel and short term vacation rentals, in compliance with City Code and without arbitrary interruption by the City; and order the City, their officers, agents, employees, and attorneys to cease from making false and slanderous public statements regarding Plaintiffs and his businesses and to record all future code enforcement hearings;

d)    Order the City to engage in affirmative, corrective measures, including but not limited to issuing a public apology for their actions which is to be published in a local newspaper of general circulation;

e)      Enter an Order retaining jurisdiction over this matter until the City has complied with all orders and mandates of the Court;

f)      Award the Plaintiffs damages, pre-judgment interest, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and

g)      Grant such other and further relief as this Court determines to be equitable, just, proper, or necessary under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands trial by jury on all issues so triable.

Dated on November 11, 2022.

Respectfully submitted,

*/s/ Jason M. Miller*

_____
Michelle A. Grantham, Esq.
Florida Bar No. 1010509
Jason M. Miller, Esq.
Florida Bar No. 624551
Najmy Thompson, P.L.
1401 8th Avenue West
Bradenton, FL 34205
Telephone: (941) 748-2216
Facsimile: (941) 748-2218
Email: mgrantham@najmythompson.com
Email: jmiller@najmythompson.com
Secondary Email:
lweaver@najmythompson.com
*Trial Counsel for Plaintiffs*