## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHAWN THOMAS KALETA, an
individual, et al.,

           Case No.: 8:22-cv-02472

  Plaintiffs,

v.

CITY OF HOLMES BEACH, a
Florida municipal corporation,

  Defendant.       /
_____

## DEFENDANT CITY OF HOLMES BEACH'S
## DISPOSITIVE MOTION TO DISMISS THE AMENDED COMPLAINT
## OR, IN THE ALTERNATIVE, STRIKE PORTIONS OF THE AMENDED
## COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, City of Holmes Beach (the "City"), by and through its undersigned counsel, hereby moves this Court pursuant to Fed. R. Civ. P. 8, 12 (b) (6) & (7), 12 (f) and 19 to dismiss the Amended Complaint (Dkt. 11) or, in the alternative, to strike certain of its allegations as set forth herein. In support thereof, the City states as follows:

1.  This case was filed on October 31, 2022 (Dkt. 1) and Plaintiffs filed the Amended Complaint on November 11, 2022. (Dkt. 11). The case follows a materially similar case which was voluntarily dismissed on August 17, 2022, *Kaleta v. City of Holmes Beach*, M.D. Fla. Case No. 8:21-cv-03025.

2.      On April 3, 2023, the Court issued an Order (1) discharging its previous Order to Show Cause (Dkt. 22); (2) denying the City's Motion to Stay Proceedings (Dkt. 21); and (3) granting in part and denying in part the City's Motion for More Definite Statement (Dkt. 20). The Court granted the Motion for More Definite Statement by requiring Plaintiffs to file a Second Amended Complaint by April 17, 2023, if they wished to rely upon certain allegations concerning notice of code enforcement fines and an inability to obtain meaningful appellate review of same. (Dkt. 30 at 16-17, ¶ 3-4).

3.      Plaintiffs have not filed a Second Amended Complaint, so the case proceeds on the Amended Complaint less the allegations identified by the Court in paragraphs 22 (c), 84, 89, and 90.

4.      The City respectfully requests this Court dismiss the Amended Complaint for the reasons set forth herein.

5.      If the Amended Complaint is not dismissed in whole, the City requests that Plaintiffs be required to join indispensable parties and that the sections of the Amended Complaint's Prayer for Relief identified herein be stricken.

## MEMORANDUM OF LAW

### I.   MOTIONS TO DISMISS.

Under Federal Rule of Civil Procedure 8 (a) (2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. Conclusory allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. Twombly, 550 U.S. at 556. A complaint may be dismissed for failure to state a claim when, ignoring any "mere conclusory statements," the remaining allegations do not "plausibly suggest" that the defendant is liable. Iqbal, 556 U.S. at 662.

### II.   GENERAL ALLEGATIONS OF THE AMENDED COMPLAINT.

Plaintiffs are Shawn Kaleta ("Kaleta") and five limited liability corporations (the "LLCs") through which he owns and operates commercial property,

including for the purpose of short-term vacation rentals. (¶¶ 5-16).[1] The Plaintiff LLCs represent (1) the Bali Hai Resort (¶¶ 6, 24-42), (2) the Island West property (¶¶ 7, 59-60), and three Coconuts properties (¶¶ 11, 55-58). Pursuant to an alleged "Anti-Kaleta" policy that began in 2012, Plaintiffs allege that they have been singled out for "individualized over-regulatory treatment" and retaliated against for lawful business practices and the exercise of free speech. (¶¶ 18-19). Plaintiffs allege that the City has (1) stalled development by "slow walking applications and other paperwork" (¶¶ 22 (a), 24-42); (2) excluded Plaintiffs from municipal hearings (¶¶ 22 (b), 43-50); (3) enforced regulations against Plaintiffs differently than it has against other comparable owners and developers (¶¶ 22 (d), 51-62); (4) unlawfully threatened the arrest of guests on Kaleta's private property (¶¶ 22 (e), 67-75) ; and (5) failed to respond to lawful public records requests. (¶¶ 22 (f), 63-66).

On these allegations, Plaintiffs bring two claims. Count I purports to seek declaratory relief, injunctive relief, and damages for "violation of equal protection of law (class of one theory)" (Caption to Count I, ¶¶ 82-86). Count II attempts to seek the same relief under a theory of First Amendment retaliation. (¶¶ 87-94).

---

[1] References in this section are to the numbered paragraphs of the Amended Complaint (Dkt. 11) unless noted otherwise.

Count I fails to state a plausible claim for relief because Plaintiffs have failed to sufficiently allege the existence of any similarly situated comparators. Count II likewise fails to state a claim because the conduct complained of would not deter a person of ordinary firmness from exercising his First Amendment rights, and because Plaintiffs have failed to allege the absence of probable cause concerning the code enforcement prosecutions about which they complain.

## III.   COUNT I SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE COMPARATORS WHICH ARE PRIMA FACIE IDENTICAL IN ALL RELEVANT RESPECTS.

Plaintiffs' equal protection claim should be dismissed because they have failed to sufficiently allege similarly situated comparators who have been treated more favorably by the City.

The equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." City of Clerburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). But, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." PBT Real Estate, LLC v. Town of Palm Beach, 988 F.3d 1274, 1285 (11th Cir. 2021) (internal citations omitted); Oakes v. Collier County, 515 F.Supp.3d 1202, 1213 (M.D. Fla. 2021).

A plaintiff who is not a member of a constitutionally protected class "'may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) class of one.'" AYDM Assocs., LLC v. Town of Pamelia, 205

F.Supp.3d 252, 265 (N.D. N.Y. 2016) (internal citation omitted). A plaintiff asserting a selective enforcement claim must plead and prove that (1) the plaintiff was treated differently from other **similarly situated** individuals; and (2) such differential treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person. <u>Lozman v. City of Riviera Beach</u>, 39 F.Supp.3d 1392, 1411 (S.D. Fla. 2014) (citing <u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001)) (emphasis supplied). Alternatively, a "class of one" equal protection claim arises when a plaintiff does not allege membership in a class or group but contends that she has been intentionally treated differently from others **similarly situated** without a rational basis. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (emphasis supplied).

While Plaintiffs title their equal protection claim as one based upon a "class of one" theory, the Court has characterized it as a "selective enforcement" claim. (Dkt. 30 at 7). Regardless of how it is characterized, it must be dismissed. This is so because, though the theories are different, they both require the identification of a similarly situated comparator who are *prima facie* identical in all relevant respects. And though Plaintiffs have attempted to identify comparators in the Amended Complaint, they have done so insufficiently.

The Eleventh Circuit has held repeatedly that equal protection claims like the one Plaintiffs bring here, whether framed as selective enforcement or class of one, cannot survive without a similarly situated comparator. PBT, 988 F.3d at 1285; Young Apartments, Inc. v. Town of Jupiter, 406 F. App'x 376, 378 (11th Cir. 2020); Leib v. Hillsborough County Public Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009) (affirming dismissal of complaint for failure to provide detail regarding a comparator); Roy v. Fulton Cnty Sch. Dist., 288 F. App'x 686, 688 (11th Cir. 2008); Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007). Indeed, the "similarly situated" requirement is applied "with rigor" in this Circuit, PBT, 9888 F.3d at 1285, and the things/projects/entities being compared "must be prima facie identical in all relevant respects." Id. (quoting Irvin, 496 F.3d at 1207). A plaintiff must show that it and any comparators are 'similarly situated' in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker.'" Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (11th Cir. 2008) (internal quotations omitted).

The comparator requirement is applied rigorously because "[e]mploying too broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny [] regulators the critical discretion they need to effectively perform their duties." Leib, 558 F.3d at 1307 (quoting Irvin, 496 F.3d at 1203). Accordingly, plaintiffs are

not permitted to rely on "broad generalities in identifying a comparator." Id. Because that is precisely what the Plaintiffs have done here, Count I should be dismissed.

### A. Plaintiffs have failed to allege a sufficient comparator as to Bali Hai.

Relative to Bali Hai, Plaintiffs allege that it was purchased in February 2019 and, in November 2019, the City approved a building permit for its rehabilitation and remodel. (Dkt. 11 at ¶¶ 24-25). Plaintiffs contend that Bali Hai "had an existing bar and lounge facility for decades prior to purchase as part of its original construction." (Dkt. 11 at ¶ 26).[2]  It is alleged that a City representative signed an approval for a 4COP license application in December 2019, and the State approved the 4COP license in January 2020. (Dkt. 11 at ¶ 27). Thereafter, though, Plaintiffs allege the City reversed course and issued a baseless Notice of Violation in March 2020 "demanding corrective action" relative to alcohol service at the property. (Dkt. 11 at ¶ 28; Dkt. 11-1 at 2). It is a misrepresentation that sounds plausible only because of its omitted context.

The Amended Complaint fails to note it, but the City in issuing the Notice of Violation required Bali Hai to apply for and obtain site plan approval "**as further detailed in the attached and incorporated letter from Neal Schwartz,**

---

[2] This allegation is demonstrably false. For purposes of this Motion, it must be taken as true.

**Building Official, City of Holmes Beach**" (Dkt. 11-1 at 2) (emphasis in original). Plaintiffs did not trouble themselves to include the incorporated letter from Schwartz, but it is attached hereto as Exhibit "A." Attachments to a complaint are to be considered in the same manner as the complaint itself and the Court may also consider documents directly referenced in the complaint. Fed. R. Civ. P. 10 (c); SFM Holdings, Ltd. V. Banc of Am. Sec. LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

Though Plaintiffs allege that site plan review was not required pursuant to § 3.5 (B) (5) (b) of the City's land development code (Dkt. 11 at ¶¶ 30-31), they ignore that Schwartz conveyed that site plan review was required for the bar/lounge as an accessory use under § 6.6.F.2.a (2) (b) of the code. (Ex. "A" at ¶ 4, p. 4). Further, Schwartz relayed that the City's signed approval for the Bali Hai's 4COP application was based on the owner's representation that there had previously been a "bar" on premises, but that the representation was untrue because the State confirmed that "there has never been a 4COP alcoholic beverage license approved" for the property. (Ex. "A" at ¶ 4). "Therefore," Schwartz wrote, the form signed by the City consenting to the 4COP license "does not give the owner permission to open a bar to business." (Ex. "A" at ¶ 4). Schwartz concluded that, because the proposed bar was different from any previously approved site plan, the property did not qualify for an exemption from site plan review. (Ex. "A"

at p. 3). Schwartz also identified multiple other site plan considerations at Bali Hai, including density, parking, and other proposed commercial uses. (Ex. "A").

Despite its contention that it need not have done so at all, Bali Hai submitted a site plan application to authorize the selling of food and alcohol in the enclosed bar/lounge. (Dkt. 11 at ¶ 32). Plaintiffs allege that the City Commission unanimously approved the site plan application on February 9 and 23, 2021, but then in October 2021 unanimously voted to permanently prohibit Bali Hai from operating a bar/lounge entirely on its premises after learning that Kaleta holds the majority interest in it. (Dkt. 11 at ¶¶32-24, 36). Plaintiffs note that, in the meantime, a settlement favorable to Kaleta was reached in other litigation between him and the City concerning other Kaleta properties. (¶ 35).

Plaintiffs also contend relative to Bali Hai that it applied in August 2021 for a building permit "for its beachfront building." (Dkt. 11 at ¶ 40). Though Plaintiffs characterize the building permit issue as "independent from the bar/lounge issue" (Dkt. 11 at ¶ 40), the application has been "repeatedly rejected" because the City claims that its approval is contingent upon Bali Hai's agreement to permanently prohibit the sale of alcohol at the bar/lounge. (Dkt. 11 at ¶ 41). Finally, Bali Hai contends that the City's alleged reversal of its approval to sell alcohol in the enclosed building, its alleged reversal of its position on the site plan application after learning Kaleta owned it, and its refusal to issue a building permit for the

beachfront building are all implementations of the "Anti-Kaleta Policy." (Dkt. 11 at ¶ 42).

On these lengthy and complex allegations, Plaintiffs contend that Angels Nest, LLC is a similarly situated comparator "in all relevant respects" to Plaintiff Bali Hai because it was given approval by the City in 2019 to sell alcoholic beverages to its guests from a bar area at its hotel. (Dkt. 11 at ¶ 38). Plaintiffs also allege that another property, The Ugly Grouper, which serves alcohol and has live music every night until at least 8 p.m. with the permission of the City, is a comparator. (Dkt. 11 at ¶ 38). These allegations are insufficient under the applicable case law.

Angels Nest and The Ugly Grouper are not similarly situated to Bali Hai merely because they are allegedly engaged in a use of their property that is like the Bali Hai's desired use. To the contrary, "[t]he 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another,'" Cordi–Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007) (citing Olech, 528 U.S. at 565), and "[i]t is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated." Conlon, 494 F.3d at 251.

Neither of these alleged comparators are similarly situated to Bali Hai because enforcement context, sequence, and timing also matter. "In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment." Conlon, 494 F.3d at 245, 253. Here, Plaintiffs make much of the enforcement context, sequence, and timing relative to the Bali Hai, contending by omission of the Schwartz letter that the City improperly reversed its approval of the 4COP license, but they offer nothing about those things relative to the alleged comparators.

Moreover, the Eleventh Circuit has drawn a necessary distinction between the sufficiency of alleged comparators where the challenged governmental decisions were one-dimensional (i.e., they involved a single answer to a single question) and those where the government's regulatory action was "multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time." Irvin, 496 F.3d at 1203 (reversing district court's denial of motion to dismiss on equal protection claim); GJR Invs., Inc. v. Cnty of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998) (dismissing an equal protection claim in similar circumstances for want of a sufficiently similar comparator), overruled on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009). In such multi-dimensional contexts, like the case sub judice, "the 'similarly situated' requirement will be more difficult to establish." Irvin, 496

F.3d at 1204. The Irvin court emphasized that comparators in the development context must be prima facie identical in all relevant respects, including being a project with similar characteristics but also being subject to the same governmental decisionmaking processes. Id.

Here, the Amended Complaint, including the conspicuously omitted Schwartz letter, shows that the City's regulatory treatment of Bali Hai was multi-dimensional, involving planning elements (the site plan, which was itself multi-dimensional), code enforcement (the issuance of a notice of violation), and building issues (the beachfront building permit). Yet the comparators are described only as to their use and, to be sure, The Ugly Grouper is not even alleged to be a hotel or resort like the Bali Hai. Plaintiffs offer no allegations relative to the comparators' zoning districts, the processes by which their permissions to serve alcohol were obtained, the sequence of events leading to such approval, or whether the comparators relied upon a previously existing and authorized use.

Plaintiffs affirmatively identify a litany of issues impacting Bali Hai, and the Schwartz letter elucidates them further, yet as to the alleged comparators Plaintiffs say simply that they are bars. The Eleventh Circuit has sanctioned dismissal of equal protection claims in similar circumstances for want of a sufficiently similar comparator. See e.g. GJR, 132 F.3d at 1367-68 (11th Cir. 1998) overruled on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Schwarz v. Ga. Composite

Med. Bd., 2021 WL 4519893, at *2 (11th Cir. Oct. 4, 2021). Because Plaintiffs have failed to allege a sufficient comparator as to Bali Hai, this count should be dismissed.

**B. Plaintiffs have failed to allege sufficient comparators as to the Island West or Coconut properties.**

Plaintiffs' complaints concerning Island West and the Coconuts properties appear to focus on the City's enforcement of what Plaintiffs call "nightly rentals." (¶¶ 55, 59). Plaintiffs nakedly allege that the owners of two properties, 101 67th Street and 102 39th Street are situated similarly to the Coconuts properties because they are permitted to rent nightly "free of the City's regulation(s)" (¶ 58) and that other comparators will be revealed through discovery (¶ 58, 60). These unadorned allegations of multi-dimensional governmental processes are insufficient under the case law of this Circuit as discussed *supra*. Again, Plaintiffs "are not permitted simply to rely on broad generalities in identifying a comparator" Leib, 515 F.Supp.3d at 1307, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not state a claim for relief. PBT Real Estate, 988 F.3d at 1286 (citing Iqbal, 556 U.S. at 678).

Finally, Plaintiffs allege comparators in the form of five properties besides Coconuts or Island West that were advertising and renting in violation of the City's length of stay ordinance, but against which the City "refuses to act" to enforce those regulations. (¶ 61). The claim should be dismissed on this basis

because failure to prosecute other offenders is not a basis for finding a denial of equal protection. <u>United States v. Rickenbacker</u>, 309 F.2d 462 (2d Cir. 1962), <u>cert. denied</u>, 371 U.S. 962 (1963). As such, the Amended Complaint fails to state a claim for equal protection and Count I must be dismissed.

## IV.   COUNT II SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The First Amendment protects against "abridging the freedom of speech." U.S. Const. amend. I. "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1722 (2019) (<u>quoting Hartman v. Moore</u>, 547 U.S. 250, 256 (2006)). To state a claim for retaliation under the First Amendment, a plaintiff must establish: "(1) his speech or act was constitutionally protected;" (2) "the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted); <u>see</u> <u>also</u> <u>Abella v. Simon</u>, 522 Fed. Appx. 872, 873 (11th Cir. 2013).

As to the second element, "a plaintiff suffers adverse action if the defendant's retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." <u>Bennett</u>, 423 F.3d at 1254. The standard is an objective one. <u>Id.</u> at 1252 (finding that the objective test was met);

cf. Thompson v. Hall, 426 Fed. Appx. 855 (11th Cir. 2011) (finding that a complaint failed to state a claim under the second element of a retaliation claim).

In Bennett, it was alleged by the plaintiff business-owners that they supported a referendum to establish a county-wide police force to which the defendant sheriff and two deputies were strongly opposed. 423 F.3d at 1248-49. Plaintiffs formed a committee in support of the referendum and sponsored a debate about it. Id. at 1249. The measure was defeated by the voters, but the plaintiffs alleged that, in retaliation for having supported it, the defendants formed a "Strike Force" for the purpose of intimidating plaintiffs. Id. The defendants allegedly took down plaintiff's license plate numbers, surveilled plaintiffs at their homes and businesses, established roadblocks near their homes, stopped their cars for no reason, issued false traffic citations, obtained confidential information concerning plaintiffs by accessing government databases, attempted to obtain arrest warrants for plaintiffs on false pretenses, and mailed flyers to 35,000 homes calling the plaintiffs "real criminals," members of a "chain gang," and "the same type of criminals that terrorize" the county. Id. Reviewing the matter on the denial of qualified immunity, the court determined that (1) an objective standard governed whether the conduct at issue would likely deter a person of ordinary firmness from the exercise of First Amendment rights; and (2) that the objective

standard was met in the case. So, the court affirmed the denial of summary judgment.

In Thompson, the plaintiff confronted the defendant sheriff at a town hall meeting concerning a case the sheriff knew nothing about. 426 Fed.Appx. at 857. Allegedly in retaliation for the confrontation, plaintiff contended that the sheriff ordered that a criminal investigation into the plaintiff be re-opened and ordered the investigating deputy to "make the charges stick." Id. Though the sheriff also opened a police misconduct concerning plaintiff, it was alleged that the defendant investigating deputy was told to focus instead upon the criminal investigation of the plaintiff. Id. According to the complaint, the investigator intentionally avoided issues of police misconduct, improperly attempted to influence the criminal investigation into the plaintiff, and questioned an unnamed, non-party neighbor in an intimidating manner. Plaintiff also observed deputies following her to and from work and noticed an "exponential increase" in presence from the sheriff's office around plaintiff's home. Id. Plaintiff also alleged that the sheriff was aware of complaints about his deputies harassing witnesses but did nothing to stop them. Id. The circuit court determined that these allegations were insufficient to state a claim of First Amendment retaliation under the objective standard.

This case is more like Thompson than Bennett, particularly when the Plaintiffs' allegations concerning the City's purported retracted approval of the

bar/lounge at Bali Hai are considered in light of the Schwartz letter. Beyond those allegations, the Amended Complaint's inferences of a prolonged campaign of harassment that would liken this case more to <u>Bennett</u> is based upon a single statement of a City Commissioner which is alleged to have occurred in August 2012 (Dkt. 11 at ¶ 19), seven years prior to the next non-conclusory facts concerning the alleged "Anti-Kaleta Policy," when the City issued a stop work order at Bali Hai in 2019. (Dkt. 11 at ¶ 43). Thus, the alleged retaliatory conduct described in the Amended Complaint, assuming it occurred as alleged, would not likely deter a person of ordinary firmness from the exercise of First Amendment rights. Count II should be dismissed on this basis.

As to the third element, precedent from the United States Supreme Court and the Eleventh Circuit requires that, when a plaintiff in a First Amendment retaliation case complains that the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff, the plaintiff must plead and prove an absence of probable cause as to the challenged prosecution in order to establish a causal link between the defendant's retaliatory animus and the plaintiff's injury. <u>Hartman</u>, 547 U.S. at 250; <u>DeMartini v. Town of Gulf Stream</u>, 942 F.3d 1277, 1289 (11th Cir. 2019) (citing <u>Nieves</u>, 139 S. Ct. at 1726); <u>see also</u> <u>Turner v. Williams</u>, 2020 WL 1904016 at *4-5 (M.D. Fla. April 17, 2020). This is required because, according to the <u>Hartman</u> Court, an absence of probable cause tends to suggest that

retaliatory animus motivated the prosecution, while the presence of probable cause tends to suggest that the prosecution would have occurred even without the retaliatory motive. Hartman, 547 U.S. at 258. The Court ultimately concluded that "[b]ecause showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that **it must be pleaded and proven**." Id. at 265 (emphasis supplied); see also Brewer v. Town of Eagle, 553 F.Supp.3d 636, 647 (E.D. Wis. 2021).

In this case, the Amended Complaint asserts that Plaintiffs have been the subject of multiple code enforcement proceedings. (Dkt. 11 at ¶¶ 43-50, 51-54, 55-58, 59-60) but only as to ¶¶ 51-54 do Plaintiffs come close to alleging that any of those proceedings lacked probable cause. The Amended Complaint should be dismissed as to Count II inasmuch as it complains about code enforcement proceedings but lacks the allegation that such proceeding was not supported by probable cause.

## V.    PLAINTIFFS HAVE FAILED TO JOIN INDISPENSIBLE PARTIES.

Under Fed. R. Civ. P. 19, a party is required if (1) in the party's absence, the court cannot accord complete relief among the existing parties, or (2) the party has an interest in the current proceedings and disposing of the action in that party's absence may "impair or impede the person's ability to protect the interest," or

"leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Id.; see also Laker Airways, Inc. v. British Airways, 182 F.3d 843, 847 (11th Cir. 1999).

If a required party is not joined, a defendant may move to dismiss the action under Rule 12 (b) (7). In weighing a Rule 12 (b) (7) motion, the court "must assume the truth of the factual allegations in the complaint," but it "is not limited to the complaint, and the parties may present evidence outside the pleadings." Muscogee (Creek) Nation v. Poarch Band of Creek Indians, 525 F. Supp. 3d 1359, 1365 (M.D. Ala. 2021) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed. 2020)). "That said, a complaint can only be dismissed for failure to join an indispensable party if the party cannot be joined." Rook v. First Liberty Ins. Corp., 2022 WL 794983, at *2 (N.D. Fla. Mar. 15, 2022) (citing Focus on the Fam. v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1280 (11th Cir. 2003)).

In making the first determination—i.e., whether the party in question "should be joined," "'pragmatic concerns, especially the effect on the parties and the litigation,' control." Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir. 1982) (quoting Smith v. State Farm Fire & Cas. Co., 633 F.2d 401, 405 (5th Cir. 1980); see also In re Torcise, 116 F.3d 860, 865 (11th Cir. 1997) ("[F]indings of

indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation.)"

The crux of Kaleta's claims is that "[i]n retaliation for the exercise of **his lawful business practices** and **his** exercise of free speech," the City has "singled out **Kaleta directly** and via the Kaleta Companies for individualized over-regulatory treatment. . ." in "retaliation.  (Dkt. 11 at ¶ 18) (emphases supplied). At multiple points, Plaintiffs complain about the City's treatment of Kaleta and his business practices. The allegations, though, include but are not explicitly limited only to the named Plaintiffs. (Dkt. 11 at ¶¶ 18, 19 (the City targeted "Kaleta businesses"), 22, 61, 76 (the City is motivated by ill will resulting from "Plaintiffs' business ventures, including short-term rentals"), 77 (the City's actions are "intended to destroy Plaintiffs' business, his business reputation and to harass and frustrate Plaintiff")). Plaintiffs allege that they have suffered lost business and profits and loss of customers"). (Dkt. 11 at ¶ 78.

Kaleta's deposition testimony shows that his business interests are extensive, both within the City and the area. (Dkt. 33-1).[3] Kaleta presently owns, or owns LLCs which own, at least twenty other short-term rental properties, at least two property management companies which manage about 1,000 short-term

---

[3] Refers to Shawn Kaleta's deposition transcript filed in support of the City's Response (Dkt. 32) to Plaintiffs' Motion for a Protective Order (Dkt. 31).

rental/hotel units, and a restaurant co-owned by a principal of Plaintiffs' counsel's law firm. Some of the LLCs have co-members or shareholders. (Dkt. 33-1 at pp. 24-64). He has developed "[a] couple hundred" or "[s]everal hundred" properties in the City since 2001 for the purpose of engaging in short-term rentals. (Dkt. 33-1 at p. 68, l. 15-21). Kaleta also owns and engages in general contracting by and through Beach to Bay Investments, Inc., which develops properties for use as short-term rentals (Dkt. 33-1 at p. 17, l. 14-18; p. 67, l. 3-5) and which, critically, Kaleta testified has suffered $1,000,000.00 in damages based on the City's alleged unlawful conduct. (Dkt. 33-1 at 222, l. 20: p.223, l. 11).

Setting aside the dissonance associated with the contention that the City harbors long and deep animus toward Kaleta and has mistreated but five of the more than 1,000 properties he has owned or managed, the Court cannot accord complete relief among the existing parties in the absence of every entity that Kaleta contends has been mistreated or has suffered damages pursuant to the "Anti-Kaleta policy." At the least, the parties to be joined must include Kaleta's contracting entity, Beach to Bay Investments, Inc., given Kaleta's testimony regarding the damages it purportedly has suffered and its role in Kaleta's business ventures. Failure to join these parties, if feasible, will leave the City subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations due to their interests. In short, the City has either mistreated Kaleta

based on the alleged "Anti-Kaleta policy" or it has not. Neither he nor other of his related entities should be permitted later to bring a separation action based on the alleged policy.

Considering the foregoing, the City requests that the Court order Plaintiffs to join Beach to Bay Investments, Inc. as a party to this action, along with any other Kaleta business entity purportedly subject to or damaged by the alleged "Anti-Kaleta" policy. Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order that the person be made a party"). If any such entity cannot be made a party, the City respectfully requests that the matter be dismissed.

## VI.   MOTION TO STRIKE UNDER FED. R. CIV P. 12 (f).

Rule 12 (f) of the Federal Rules of Civil procedure provides that a "court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12 (f). The Federal Rules define a "pleading" as: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7 (a) (1-7).

In the Amended Complaint's "Prayer for Relief," Plaintiffs ask this Court to "[o]rder the City to engage in affirmative, corrective measures, including but not limited to issuing a public apology for their actions which is to be published in a

local newspaper of general circulation." (Dkt. 11 at p.27, (d)). This subparagraph must be stricken from the Amended Complaint because, while federal courts may compel United States officials to perform duties that are within the jurisdiction of the United States District Courts pursuant to 28 U.S.C. § 1361, they do not have the power to mandate officials to provide oral or public apologies. Garcia v. Cameron, 2010 WL 54777645 (M.D. Fla. Dec. 30, 2010). As this case does not involve federal officials, such relief "is not within the parameters of § 1361." Moreover, federal courts have held that a district court exceeds it equitable power when it orders a party to apologize. Ali v. Barton, 2020 WL 7871948, at *7 (N.D. Fla. Aug. 25, 2020); see also Woodfruff v. Ohman, 29 F. App'x 337, 346 (6th Cir. 2002) (noting that the court was "not commissioned to run around getting apologies"). Considering the foregoing, the City respectfully requests that this Court strike subparagraph (d) of the Plaintiffs' Prayer for Relief.

Further, the Amended Complaint improperly seeks relief without any relationship to the factual and legal claims at issue. Plaintiffs seek injunctive relief ordering the City (i) properly notify Plaintiffs of code enforcement hearings; (ii) to cease "false and slanderous public statements" and; to (ii) to record all future code enforcement proceedings. (Dkt. 11 at p. 27). The Court has previously stricken the allegations concerning notice, and there is no cause of action based on defamation or the failure to record code enforcement hearings. Accordingly, the City

respectfully requests that the Court strike these allegations from Plaintiffs' prayer for relief.

**CONCLUSION**

For the foregoing reasons, the City respectfully requests this honorable Court grant the instant motion and dismiss the Amended Complaint. Should the Court decline to dismiss the Amended Complaint or dismiss it only in part, the City respectfully requests that the Court strike those allegations identified herein concerning Plaintiffs' Prayer for Relief and require Plaintiffs to join indispensable parties as set forth herein.

/s/ Jay Daigneault, Esq.
Jay Daigneault, Esq. - FBN: 0025859
Randol D. Mora, Esq. – FBN 0099895

**LOCAL RULE 3.01 (g) Certification**

Pursuant to Local Rule 3.01 (g), undersigned counsel has conferred with counsel for the Plaintiffs regarding the relief requested in this Motion. The parties do not agree on the resolution of all or part of the motion. Plaintiffs' counsel does not consent to the relief requested in this motion.

/s/ Jay Daigneault
Jay Daigneault, Esq. - FBN 0025859

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2023, the foregoing was filed with the Clerk of the District Court using the CM/ECF system which will provide an electronic copy to the Parties' counsel of record.

Page 25 of 26

/s/ Jay Daigneault, Esq.
Jay Daigneault, Esq. - FBN: 0025859
Randol D. Mora, Esq. – FBN 0099895
Trask Daigneault, LLP
1001 South Fort Harrison Ave., Ste. 201
Clearwater, FL 33756
Ph: 727.733.0494; Fax: 727.733.2991
jay@cityattorneys.legal
randy@cityattorneys.legal
jennifer@cityattorneys.legal